We're here on Banc to consider the matter of Nakia Garris v. Sect Pa Depto Corrections En Banc. May we proceed? Yes, Your Honor. Thank you. Good morning. Good morning. May it please the Court, my name is Anthony Holtzman and I represent the appellant in this appeal, Mr. Nakia William Garris. And if it please the Court, I'd like to reserve five minutes for rebuttal. Okay. Thank you, Your Honor. In December of 2003, when Mr. Garris' conviction for voluntary manslaughter became final, Apprendi v. New Jersey and its immediate predecessor, Jones v. The United States, had clearly defined certain limits of the so-called prior conviction exception by teaching us in unequivocal terms that the facts that are covered by this exception are covered only because they were established through the constitutionally required procedures for obtaining a criminal conviction. Therefore, it was clearly established that in applying this exception, a court cannot make sentence-enhancing findings of fact on the basis of materials that do not reflect facts that were established through the constitutionally required procedures. And with these points as a backdrop, Your Honors, I'd like to spend the remainder of my uninterrupted time today responding a bit more fully to some of the contentions that the Commonwealth made in its supplemental briefing in this appeal. First, the Commonwealth cites a variety of federal and state cases in which it claims that differing courts concluded that the prior conviction exception covers the type of sentence-enhancing fact-finding that took place in this case. The Commonwealth would have this court believe that there are a multitude of other courts out there that are in sync with the Pennsylvania Superior Court's decision, and that, therefore, it could not be said that the Superior Court acted unreasonably in this case. But that's simply not true, Your Honors. A careful reading of the Commonwealth's cases reveals that, while in some of those cases, the courts concluded that the prior conviction exception allows for the finding of facts beyond the fact of a mere conviction itself, the courts did not hold that in making this type of fact-finding, a sentencing court can rely on constitutionally uncertain materials, like police reports and witness statements, that were relied upon in this case. In fact, with one or maybe only two exceptions, this issue, that is to say the issue of whether the sentencing court can rely on constitutionally uncertain materials, wasn't even discussed in the opinions that the Commonwealth cites. In addition, Your Honors, even if there is a case out there somewhere in which a court said that, for purposes of the prior conviction exception, as it was articulated and explained in the Apprendi case, it is permissible to rely on constitutionally uncertain materials, that alone does not mean that Apprendi is unclear in establishing that this view is not correct, nor does it mean that the Superior Court reasonably applied the prior conviction exception in this case. In fact, on this point, the Tenth Circuit explained in Valdez v. Ward at 219 F. 3rd 1222 that, quote, the fact that one court or even a few courts have applied the precedent in the same manner to close facts does not make the state court's decision reasonable, closed quote. The Commonwealth also seems to argue that, relative to this case, the scope of the prior conviction exception was not clearly established because in the Supreme Court case of Shepard v. The United States, the dissent suggested that a court can make sentence enhancement findings that are gleaned from complaint applications and police reports. But I submit that this argument also doesn't fly, Your Honors. In Shepard, as we explained in our briefing, a de facto or effective majority of Supreme Court justices concluded that the prior conviction exception does not embrace a finding of fact that is gleaned from complaint applications and police reports. This type of finding instead is covered by the general rule of Apprendi, and therefore using it to enhance a sentence runs afoul of the Sixth and Fourteenth Amendments. And therefore, if this court does not apply the case of Teague v. Lane to bar Shepard from being considered in this instance, then the Commonwealth's reliance on the Shepard's dissent falls flat because the de facto majority controls here having been issued before the relevant state court decision, meaning that the relevant state court decision is directly contrary to the holding in Shepard. But if we assume, on the other hand, for the sake of argument, this court will apply Teague to prevent Shepard from being considered here, the Shepard dissent cannot be used, as the Commonwealth suggests, to inject ambiguity into Apprendi's otherwise clear holding with respect to the prior conviction exception. The Supreme Court has made clear in Williams v. Taylor, among a variety of other cases, that whether its precedent was clearly established at a particular point in time turns on its holdings, not on dicta and not on dissenting opinions that were issued in later cases. In fact, the Second Circuit explained in Brown v. Greener, 409 F. 3rd, 523, that, quote, later Supreme Court decisions play no role in assessing the reasonableness of the state court decision. Closed quote. At the end of the day, in this case, Your Honors, what we had is a scenario where the sentencing court used materials that lack constitutional certainty to find that Mr. Garris burglarized a residence that was occupied at the time of the burglary. That is to say that he committed first degree burglary, even though the constitutionally certain materials show, to the contrary, that he pled guilty to burglary. You used the term constitutionally uncertain. Yes, Your Honor. Several times in your uninterrupted presentation. How do you distinguish between a factor or a fact which you say is constitutionally uncertain and a sentencing factor that clearly a court can look to for the purpose of determining an appropriate sentence and whether or not there's some circumstance that should suggest a more enhanced sentence than would be appropriate if that factor were not present? I think, Your Honor, the way I would describe it is a constitutionally certain material is one that's been tested through the procedures that the Constitution requires. That is to say, something that's found by a jury under the beyond a reasonable doubt standard or, in the alternative, something that the defendant admits during a plea colloquy would be something that's deemed to meet the Sixth Amendment and the Fourteenth Amendment criteria. The cases using those phrases have always included, I don't have the exact language now. I can find it. They've talked about a fact found by a jury beyond a reasonable doubt, a fact that is admitted by the defendant during a colloquy or other facts of record or judicially recorded statements. I can find that before we're done. So doesn't the court specifically allow for other kinds of considerations other than things that are admitted during the colloquy or facts that are contained in the indictment that are required for finding of guilt? I think what the court was trying to capture there, Your Honor, and I think it uses this phrase in Shepard, these are materials with conclusive significance. They're sort of things that would essentially be, to think about it almost in a different context, judicially noticeable, things that you can glean from looking at the court records that were generated as a result of a constitutionally requisite procedure. So if you have a document that was generated through that process, presumably it would be like any other court judicial record. And, you know, judicial records, of course, are generally judicially noticeable. Let me ask this question then, because plea colloquy would be one of those records that you could look to if, during the plea colloquy, the facts were that the defendant entered an occupied dwelling but pled guilty to his plea was a second-degree murder, but the Commonwealth puts on its facts and the court asks, is that accurate, is that correct? And the defendant says, yes, that's correct. I entered that dwelling and it was occupied at the time. That would then be sufficient to enable the sentencing enhancement in this case? I think that would, Your Honor. The Supreme Court has said that in a plea colloquy the defendant is knowingly, voluntarily, and intelligently waiving the right to a jury and the like, and therefore statements made during the colloquy are deemed to be constitutionally certain. Of course, we didn't have that in this case. But you're addressing Shepard. You're addressing what was determined in Shepard, and that came after his conviction became final. Isn't that correct? Isn't your focus really on Apprendi and that this is the poster child case for Apprendi where something of which he was not convicted was used as a sentencing factor to increase his sentence? Certainly, Your Honor. That's certainly one way to look at it. I think, assuming that T applies here and that decisions that were rendered by the Supreme Court after Mr. Garris' conviction became final, I absolutely believe that this is the poster child of Apprendi. Apprendi says, in unequivocal terms, that what this is all about is constitutional certainty, number one. The prior conviction exception is described by the Apprendi court as a narrow exception. Was Apprendi a recidivist case? No, it was not, Your Honor. Was Apprendi an AEDPA case? No, it was not. What Supreme Court case holds that for purposes of recidivist sentencing statutes, the Constitution requires that facts concerning past convictions must be proved to a jury beyond a reasonable doubt. There is no Supreme Court case that reaches a holding in that specific, Your Honor. And the Supreme Court jurisprudence of AEDPA says that for it to be contrary to, it has to be contrary to a holding of the United States Supreme Court, correct? That's correct. That's one of two ways under AEDPA. The other one is an unreasonable application of existing precedent. And, of course, there's case law to say that you can unreasonably fail to apply a clearly established Supreme Court principle in a new context, one that the Supreme Court hasn't specifically addressed in a holding. And I believe that's what we have here. Your brief doesn't really address how this would be an unreasonable application of Almendarez-Torres. As I remember, your brief mentions that case just once on page four. It doesn't even address how this might be an unreasonable application of Almendarez-Torres. I see it as an unreasonable application of the prior conviction exception, as it's described in Apprendi, after Almendarez-Torres. Apprendi includes the prior conviction exception as part of its holding. It says, other than the fact of a prior conviction, facts used to enhance a sentence need to be proven to a jury beyond a reasonable doubt. I'm paraphrasing. Coltsman, let me ask you this question. In your supplemental brief, you begin by arguing that the fact of a prior conviction means only the actual fact that a defendant was convicted. Okay. If we find that Apprendi and Almendarez-Torres may be reasonably interpreted to allow judicial fact-finding of facts underlying a prior conviction, do you lose? No, I don't believe so, Your Honor. And why not? Because we can use the reasoning of the Supreme Court in both, well certainly in Apprendi, which explains to us what the purpose of the prior conviction exception is. It's the rationale. So to the extent that that phrase, other than the fact of a prior conviction, is somehow unclear, if this were an exercise in statutory construction, it would suddenly become crystal clear when we look at the reasoning underlying that holding. And the reasoning says, number one, this has to do with constitutional safeguards. Number two, Almendarez-Torres was a, quote, narrow exception, not a broad exception that allows for open season, for sentencing courts to look at whatever they want and make whatever findings that they want, as long as it relates to a prior conviction. It's a narrow exception. It's one that the court described as an exceptional departure from its historic precedent. So you look at those things and you say, well, assuming that somehow the fact of a prior conviction is an unclear phrase, it becomes crystal clear when you look at the underlying reasoning. And that's why we still win under Apprendi. Is your position that the fact of a prior conviction is limited to the judgment of conviction? Or would you concede that it could have an interpretation, just as was suggested by the language that Judge Fischer put to you? I think that's right. I think it could have an interpretation. There are certain aspects to a judgment of conviction. There are certain things inherent in a judgment of conviction. For example, what the conviction was for. And that sort of thing. Sort of are components to the fact of a prior conviction. So where do you line draw on the facts underlying the conviction that can be looked to by a court in a similar position to the court here? I think that, again, the facts that can be looked to in this type of scenario would be those that, as I said before, essentially would be judicially noticeable in the sense that they are reflected in court documents or in a plea colloquy, which has also been deemed by the Supreme Court to satisfy the constitutional criteria. But otherwise, in court-generated documents resulting or having been run through the constitutional process for obtaining a criminal conviction.  There is absolutely, Your Honor. Aren't you dealing here with what you're arguing to be inconsistent facts, facts that are inconsistent with the prior conviction? They can't be reconciled, Your Honor. The prior conviction in this case was that my client burglarized a structure that was not designed for, was not a residence and was not occupied at the time of the burglary. And the sentencing court found that it was a residence that was occupied at the time of the burglary. You just can't reconcile those two things. So you have what I call constitutionally certain facts, the ones that are reflected by the judgment of conviction in this case, which is that my client pled guilty to second-degree burglary. And then you have what the sentencing judge found, which is effectively that my client committed a first-degree burglary, the elements of which are inherently inconsistent under Pennsylvania law with second-degree burglary. And by the way, that makes this even more unreasonable than it would otherwise be. And that also distinguishes this case from Shepard, where the facts that were found by the sentencing court were consistent with and sort of subsidiary to the constitutionally certain facts. And that was even deemed to be inappropriate in Shepard. Your best case seems to be Apprendi, but that case to me seems to be in tension with Almendariz-Torres. Is there a principled way that we can reconcile those two cases? Well, among other things, Apprendi says Almendariz-Torres was based on its unique facts. It also says that they were the court in Apprendi was comfortable with Almendariz-Torres, at least for the time being, because. But in point of fact, the Almendariz-Torres court allowed the judge to look at the facts underlying a conviction. Allowed the judge to determine that there were convictions, not the facts necessarily underlying those prior convictions. In other words, in Almendariz-Torres, the sentencing court concluded that the defendant had three prior aggravated felony convictions that were determined by looking at the prior conviction records. The court in Almendariz-Torres, as far as I read the case, did not go further than that to make findings of fact about those prior convictions or that relate to or that are subsidiary to the prior convictions. That's still good law, right? Yes, it is. If Pennsylvania had a generic statute on burglary, then it would seem to me the sentencing court did nothing wrong. Would you agree with that? No, Your Honor, I wouldn't. When you say generic, you mean defining the elements to include burglary of a structure? Yes. I still think it would have done something wrong, Your Honor, in the sense that my understanding of generic burglary statutes in other states, such as in Massachusetts, which was at issue, is that they define a generic burglary to include a structure or other dwelling, and that's about it. Here we had to determine, in order to get to where we got here, that there was a residence that was designed for human occupation and that it was occupied at the time of the burglary. I don't believe those elements are part of what you would normally think of as a generic burglary statute. No, no, no, but that's precisely my point. A generic burglary statute would not have those conditions or those requirements. Well, what's a sentencing court to do? Let's assume that we have a generic burglary statute, even the old burglary statute in Pennsylvania, that just requires the unlicensed entry into a building, a separately occupied structure with the intent of committing a crime therein. And the person is convicted of that or pleads guilty, and at sentencing, the judge is given information only in the form of a witness statement, not by witnesses coming in to cross-examine, that a witness was present and said life was held in her throat, rape was threatened, phone was cut, all that just in a witness statement, and then the defendant fled. You're saying a sentencing court couldn't look at that kind of information to determine whether or not you've got your basic, everyday, gut-variety burglar or somebody who is a sufficient danger to the community to require incapacitation? I don't think so, because if that fact, if that finding is going to be used to enhance the defendant's sentence, then the teaching of Apprendi is that it can't be found by a single officer of the state, i.e., the sentencing judge. Well, then how does the judge determine what's an appropriate sentence? You have to get at the characteristics of the offense and the offender. You're never going to have a situation where all that stuff is crammed into the elements of the offense. There's always going to be, or almost always going to be, information that will come in from the prosecution to show that this person is a threat to society or a likely recidivist, and from the defense to show that they're either mitigating circumstances here or the person's not likely to be appeased or she has shown remorse. The judge has to sift through all that stuff and determine, do I incapacitate, do I treat, do I simply impose a sentence that might give general deterrence? How do you do that if you're confined to the elements of the offense of conviction? That's certainly permissible if all you're doing as a sentencing judge is imposing a sentence within a range, within a statutory range. If you're enhancing it, and when I say enhancing, I mean taking a maximum sentence from one level to the next, so increasing the maximum of 20 years to 50 years, as happened in this case. So the enhancement you're talking about is increasing. Yeah, I'm talking about an enhancement. That's right, Your Honor. So when you're dealing with an enhancement, yeah, and when you're dealing with an enhancement, those types of findings need to be made by a jury. And yes, precisely, by the term enhancement, you're very specifically meaning moving beyond the statutory maximum. Correct. That's what you mean, right? And that's what puts it right in the middle of the prende, isn't it? That's right, Your Honor. Let's go back. If this were not, if AEDPA weren't involved, you have a great case. But the problem is, as Judge Hardiman noted, is that there's a weak link here. Under AEDPA, it has to be contrary to or an unreasonable application of clearly established Supreme Court law. In the Ninth Circuit, the dissent of Chief Judge Kuczynski in the Wilson v. Knoll said that under AEDPA, you must point to a Supreme Court holding clearly establishing that a judge may not find facts about the offense underlying his prior conviction. Read literally, the prende itself seems to limit judges to finding the mere fact of the prior conviction. The courts have sometimes read this exception more expansively. The Supreme Court hasn't straightened this out. How can you say this is clearly established law? Well, Your Honor, first of all, I don't think that a dissenting opinion in a Ninth Circuit case is a source of… Forget dissenting opinion. Let's talk about exactly what he was saying. I think, first of all, looking in the four corners of the prende opinion, I do think it's quite clear what this is all about. But I think the broader point here is that a principle doesn't have to be applied to an exactly identical set of facts by the U.S. Supreme Court in order to have an AEDPA issue. There's case law from this circuit, Fischetti v. Johnson at 384 F. 3rd 140. You're missing my point. If it's clearly established, why are there a number of courts going the other way? I don't think there are a number of courts going the other way, Your Honor, not on this particular issue, which is that you can't consult these constitutionally uncertain materials. Well, the First and the Eighth have gone the other way. I am not familiar. I will concede, as I did up front, that some courts have said you can look to facts beyond the mere fact that there was a conviction. But I am not aware. I certainly don't believe that the cases cited in the Commonwealth's brief say that you can, in making those sorts of findings, you can look to these what I call constitutionally uncertain materials. I don't think that was held in any of those cases. I thought your best argument was Knowles is out there. Follow it. That's part of it, yes. And if we follow Knowles, you win. Sure. But that also puts us at odds with the Eighth Circuit and the First Circuit, right? I'm not familiar necessarily with the First and Eighth Circuit cases that you're referring to, Your Honor. I've searched for other cases that are consistent with the Ninth, and I've come up with at least one that I would read that way. I'm referring to Port-a-Latin. I'm sorry, I meant to say the Second Circuit and the Eighth. Santiago. Port-a-Latin, which is a follow-on to then-Judge Sotomayor's opinion in Santiago, and then the Eighth Circuit in the United States versus Davis. The First Circuit case seems to suggest that it's on board with those two, but it's not entirely on point. Are you familiar with Davis and Port-a-Latin? I am. My recollection of those cases, Your Honor, and I apologize I don't have it at my fingertips, is that the issue of whether consulting these materials was not really the crux of the holding there. Instead, the crux was can you make findings other than the mere fact of a prior conviction? You say no, but two courts of appeals say yes. I say you can't make the findings with reference to materials like police reports and witness statements, which, by the way, this Court has construed Shepard, and again, getting back to that, has construed Shepard in a way that's consistent with this point. I thought actually your best argument was not a Shepard-based one, but going back to what Judge Rendell said earlier, I understood your argument to be that no court had ever said that fact of a prior conviction could mean fact of something that wasn't a prior conviction. You pointed out that these are mutually inconsistent definitions between first and second degree burglary. Is there any precedent for the idea that you could have a conviction for one thing, but have your sentence enhanced above the statutory maximum based on something for which you were not only not convicted, but which would be contrary to what you were convicted for? No precedent to support that sort of outcome, Your Honor, and again, that's why this is in the sweet spot of Apprendi. I think it's just such a big problem here that the recidivism statute, the Pennsylvania recidivism statute, doesn't talk about burglary in the first degree or burglary in the second degree. It defines as a crime of violence, burglary of a structure adapted for overnight accommodation at which time of the offense any person is present, and that's what the sentencing court did. It looked at the facts to say, was this particular crime a crime of violence? That's right. The three strikes law, Your Honor, defines a crime of violence with reference to a burglary in the same way that the burglary statute defines first degree burglary. So, yeah, that's how the sentencing judge got to where we ended up here. But, yeah, exactly what happened was in applying the three strikes law, the sentencing judge went behind the second degree burglary conviction, sifted through police reports and witness statements, and decided, yeah, you know, this place was an occupied dwelling and, therefore, the three strikes punishment is appropriate, even though that was directly inconsistent and irreconcilable with what my client pled guilty to. Well, let's focus on Shepard for a minute. Now, it's clear in Shepard that Justice Thomas hates Almondaris Torres, right? We'd agree on that, I presume. I think that's pretty clear, yeah. Okay, so. Now, even though he was on the other side once the decision was decided in 98. Well, I guess we'll. I agree with you. We'll discuss that later. He evolved. He evolved. He accepts a majority finding. But, Justice Thomas described the breadth of Almondaris Torres in Shepard as permitting judicial fact finding that concerns a defendant's prior convictions. Those were his words. So, keeping that in mind, how does the judicial fact finding here run afoul of that pronouncement? I think that Justice Thomas was hopefully capturing what I think he was, which is that when he says concerning the fact of a prior conviction, he means finding the fact of a prior conviction. Well, clearly he meant more than that, right? Because if his view as expressed in Shepard was limited, as you seem to be speaking generally, to the judgment of conviction, then he'd have much less concern than he expressed. Well, I would say this too, Your Honor. Where, of course, Justice Thomas agreed with the plurality of justices, that what was going on in Shepard was, in his words, not only constitutionally problematic, but constitutionally in error. So, he starts out by saying that, you know, to construe the statute I'd issued in Shepard the way that the government would construe it as a constitutional error. And that was a scenario where constitutionally uncertain materials were being used to make findings about a prior conviction. Mr. Holtzman, thank you for your time. Did you reserve time for your question? Five minutes. Thank you, Your Honor. Good morning, Mr. Chief Judge. May it please the Court, Tom Dalton is from the, Assistant District Attorney Tom Dalton is from the Philadelphia District Attorney's Office. Let me begin by stressing what I think is the main point here. Under the deferential habeas statute, federal courts don't have the power to overturn state court decisions unless the state courts have unreasonably implied the holdings, not the dicta, of the United States Supreme Court. That's what the Supreme Court said in Williams v. Taylor. The Supreme Court has repeated that phraseology in Yarborough, in Lockyer v. Andrade. The question in this case is whether the scope of the exception to apprendi for sentencing facts relating to prior convictions was properly applied by the state courts. The United States Supreme Court has only described that exception to apprendi in dicta. The scope of the exception remains completely undefined by the holdings of the United States Supreme Court. Apprendi was not a recidivist case. Shepard, which was obviously followed apprendi and was obviously after the direct appeal on this case, was a case of statutory construction under the Armed Criminal Convictions Act, Armed Career Criminal Act, excuse me. So the arguments we're making here about whether the exception for recidivist facts under apprendi encompasses facts about the conviction or facts of the prior conviction or whether the sentencing judge is allowed to consider witness statements or police reports or whether the sentencing judge is allowed to look behind the elements of the crime of conviction and all the rest have not been the subject of the United States Supreme Court holding. In the words of Judge Kaczynski in the dissent in Wilson v. Knowles, the Supreme Court has yet to straighten this out. In fact, the Supreme Court said explicitly in apprendi and in Shepard that it was not deciding the scope of the recidivism exception under the United States Constitution, which is the ultimate question here. That is the end of the matter for this case because the habeas statute prohibits relief under these circumstances. And I'll just say not only do we have apprendi and Shepard, but we also still have Almendarez-Torres, which the United States Supreme Court specifically said in apprendi and repeated in Shepard that it was not overturning. So what we have is conflicting dicta from three cases. That, under the EDPA standard, is not enough. The other major point, which I want to make at the beginning, it's in my brief, but it's an independent reason why the writ can't be granted, is that even if we accept the interpretation of apprendi and Shepard as clearly established law, Garris is still subject to Pennsylvania three strikes rule based on an issue of state law, which is the Schiffler case. Is the five minutes up? No, not yet. I apologize. I sense a certain chomping at the bit. And it is in my brief. I'll entertain questions about it if the court has questions about it. But I'd like to get to this court's questions. Are you finished with yours? I am finished with my presentation. Isn't apprendi a Sixth Amendment case? Gee, I thought I'd finally get my turn. If you hesitate, go ahead. Judge Dangerfield may ask a question. You took a breath. I was eager to get to the state aspect of this, because unlike all the questions from my colleagues, I'm still wondering why this matter is before us, and that's not an existential consideration. There seems to be some dispute between you and Petitioner's counsel as to just what the Superior Court said in the various stages of the state process here. But it does seem that there were at least certain aversions by the Superior Court to the fact that there were two other crime of violence offenses, convictions, rather, that, as you suggest, would afford a basis here for three strikes applicability. Is that right? Yes. And there's a footnote in the appellant's supplemental reply brief, rather, that suggests that the Schiffler issue was resolved by the Superior Court in their favor. And you challenged that. I disagree with that. I mean, that's obviously a matter of reading the opinion. On direct appeal, before Schiffler was decided, the State Superior Court said we conclude that the trial court's opinion carefully and correctly responds to the issues, plural, that appellant raised. They agreed with everything that the trial court had ruled on direct appeal, which counted the three prior convictions all separately. Schiffler had not been decided yet. Schiffler was decided between direct appeal and PCRA. So without saying it, is it your position that we never should have issued a certificate of appealability in the first place? Yes, that is correct. Does the doctrine of constitutional avoidance apply here, or should it have applied? Yes, because I think that ultimately what's happened here is the State Court didn't reconsider its direct appeal decision under Schiffler. What it said was when Schiffler And we can't decide the Schiffler. Exactly. And even assuming that Schiffler was, or state law was improperly decided in this case, and I don't think that that's right, but assuming it was, it's not a federal issue. Mr. Dalganis, can I take you to a different point? By all means. Can you point us to any decisions of the Pennsylvania Supreme Court that set forth what is required for admission of a police report? In other words, what are the constitutional requirements? At sentencing. Well, yes. Because it would be a different standard. Yes. At sentencing. I'm not aware of any Pennsylvania Supreme Court cases which have interpreted Apprendi to define the circumstances under which. Yes, I'm just talking about a police report. I mean, they put in a police report in this case. Correct. How do we know how valid that is? Where did the police person get it? Is that not a concern? Of course. And under the three strikes law, if Mr. Garris had objected to the underlying facts at the sentencing, if he had said no, the girl was not in the house during the 1997 burglary, that would have triggered a hearing. But what does Pennsylvania require? We're talking about Judge Smith took us to Pennsylvania law. Well, what does Pennsylvania require? I mean, this is a rule that would apply across the board. You can let in a police report. So how do we know what are the requirements to admit a police report? I'm sorry. What I'm saying is that under state law, if there is some dispute about the veracity of the police report, then a hearing would have happened, and it would have turned from the police report to witnesses. And the standard would have been preponderance of the evidence. And the ultimate question here is whether it should have been preponderance, whether a reasonable doubt under Apprendi. But in terms of litigation and having a hearing based on the police reports, if the point had been contested, then a hearing would have been triggered. Let me pick up on that. I mean, let's assume if Shepard applies, doesn't Shepard say that for purposes of determining exactly what you pled to because there's a question, you can look to an indictment or an information, a plea agreement, or a plea colloquy? Where does it say that you can look to a police report or a victim statement? It does not. Shepard absolutely does not say that. Two things. Number one, Shepard does. I know there was some discussion earlier this morning about whether the operative phrase fact of a prior conviction is limited to simply the verdict, the judgment that appears on the docket sheet. Shepard is pretty clear that that's not what it meant. That's not what the court meant in Apprendi, that there are at least some wiggle room. But I agree with you, Shepard doesn't. Some wiggle room if you don't know what it is that the person necessarily pled to. There may be a qualifying conviction under a three strikes you're out or a sentencing statute. There may be a non-qualifying. In order to determine which is which. But here what you've got is a person who pled guilty unequivocally to second degree burglary. No question about it. How do you take a second degree burglary and by allow a sentencing judge to make it a first degree burglary? Let me first answer your Shepard point. The thing is, is that Shepard doesn't say anything about witness reports, police reports. Almondoras, Torres doesn't say anything specifically about those things either. But the dicta in Almondoras is almost diametrically opposed to the dicta in Shepard. That is, Almondoras, Torres says things like there's almost nothing in the sentencing context that can't be decided by the judge by a preponderance of the evidence. Granted, that's dicta. But so is Shepard. If a defendant pleads guilty to a simple assault in Pennsylvania and the judge notes that a sharp object was used, can that judge determine that it really wasn't a simple assault and actually it was an aggravated assault and you're under the three strikes rule? Is that a fair extension of the rule that you propose? I think it is, although I would say that if the defendant objected and said no, then there would be a hearing about it. Said no to whom? Said no judge. The prosecution is misconstruing what happened at that earlier trial. It was not a sharp object. Isn't it fairer to hold the prosecutor to its bargain that this is a simple assault rather than years later change it? Well, that gets to the second point here, which is that I think that the one thing that makes this case more than just a routine type of case is that in the first trial, Mr. Garris or it wasn't a trial, the first conviction was a plea to second degree burglary, not first degree burglary. And then we get into... And that's what he was convicted of. And that's what he was convicted of. So how is the fact underlying the prior... Mutually inconsistent with first degree, right? Yeah. How is the fact underlying? I mean, if you had a first degree burglary plea here, there would be an Amadours-Torres issue there. What's the fact underlying? And there it might be fair to say, okay, you had to prove that there was a person in the house and you necessarily had to for first degree. Okay. He was convicted of second degree burglary, which does not have as an element that a person's living in the house. The fact underlying that conviction would be that there is no person in the house. That's what underlying that conviction. How can you take that argument and say that suddenly a fact underlying a case in which he was not convicted suddenly becomes not just a fact underlying the conviction but a fact of the prior conviction in order to raise his statutory maximum? And that's what Apprendi was all about. We're talking Sixth Amendment here and Amadours-Torres is a tiny little exception for proven facts. Here we have a fact that would have been proven for a different conviction. How do you reconcile this? Well, leaving aside Amadours-Torres. You can't leave it aside. You can't leave it aside. Well, I'm saying that, well, okay, I think that Amadours-Torres is a fairly, the dictum in that case is fairly broad, not narrow. You said it was a narrow exception to Apprendi. Well, they say it's narrow. Well, Apprendi said it was narrow, but Apprendi didn't even deal with a specific case. Yeah, but how is dictum clearly established law? Well, but the standard review goes backwards. That's the softball. That's the softball. That's just right. Exactly. Maybe that's the best response to that. Let me get, I don't want to leave the secondary burglary point. Well, just for a second, because you were starting to say that the point that makes this not the ordinary case. You never got a chance to finish your thought. What is the point that makes this not an ordinary case? Right. It's the secondary burglary point, and here's the points I wanted to make about that. First of all, this is not a case about estoppel or double jeopardy. As I understand the argument here, even on the other side, even my friend across the aisle admits that if the facts about the 1997 burglary had been submitted to a jury by reasonable doubt, the court could have come to the opposite conclusion about that. So the question is whether it's a reasonable doubt or preponderance. But they weren't. But they weren't. There are a number of members of this bench who were state trial court judges. And, yes, this is an unusual case. Whatever powers we had then did not include judicial transubstantiation. Actually, mine did. You, too, were an unusual judge, just like this case. How do you take an F-2 and transform it into an F-1? Have you ever seen that being done? The key point is that a criminal verdict does not amount, in any context, to a factual finding which corresponds to the elements of the crime. There are a lot of reasons why a jury or a judge can find someone guilty of one thing. You know, a third-degree murder is a first-degree murder. I don't think you're getting to the question. This is not a matter of where there is a hole here that could be filled in. F-2 says, and this goes back to Judge Sirica's point, I mean, if you had a general burglary statute, that would be one thing. But it's very precise. It says you're convicted of going into someplace which is not a dwelling and doesn't have somebody in it. And this sentencing judge said, despite that conviction, I'm saying you went into a place that was a dwelling and it was inhabited. You can't, in the universe of what's possible, those two things cannot be true at the same time. So how can you say this is fact-finding about the prior conviction when what it's really is fact-finding about the exact opposite of the conviction? How do you get around that? But that's my point, is that because it's not an estoppel point, that we're all in agreement that you can relitigate it. The question is under what standard. Now, I understand that that's not. It's being used to raise his maximum sentence, though. Yeah. Right. I'm not talking about estoppel. No, exactly. I'm not intending to ask you about estoppel. I'm asking you about the point you have repeatedly made in your briefing in here, which is this is just like Santiago. It's the who, what, and where about the conviction. But the conviction says it isn't those things. By definition, it isn't those things. So how can it be fact-finding about the conviction when the conviction, by definition, seals off the very facts that the sentencing judge declared were facts? Well, maybe we're disagreeing about when you say facts about the conviction. I agree that it's not the conviction, but there were facts introduced at the plea hearing, which we don't have a transcript of, frankly. Well, then you can't tell us. Or if you could, you'd have to say you're outside of Apprendi, right? Because if you start saying – I mean, it's clear here, if I could, it's clear that the court at sentencing looked at the police report and the witness statement. Correct. It wasn't part of a plea colloquy. Yes, that's correct. Although we don't have the plea colloquy, so we don't know what facts he admitted. But the record indicates they looked at the police statement and the police report and the witness statement. Correct? That's correct. Well, let me just say that if, just as a hypothetical, if we had the same facts here, but we also had a plea colloquy in which the defendant admitted to facts that would have supported a first-degree burglary case. But that's not this case. But I'm saying if that were true, and we have a blank. If that were true, wouldn't the trial judge have a responsibility at that point to say, well, then I can't take this plea? Because if what you're telling me is that you burglarized the dwelling with somebody in it, then you can't be guilty of second degree.  It's inconsistent with the facts you're acknowledging. I'm not sure that the trial judge would be unable to accept that plea. Can we move to a – let me move – excuse me. Let me take you to another point. You seem to argue, you argue in your brief, supplemental brief, and also in your argument here this morning, that there just was no – there were no cases out there from which one could conclude that this was an unreasonable application of apprentice. There's no way for a state court to have looked at these facts and said, you know, this isn't consistent with apprendi. And you're taking, I think, a very narrow view of what apprendi states. Let's look at the Supreme Court's decision in Panetti v. Quarterman. You're familiar with that case, right? I am. Okay. And it talks about a general standard. Does it not? As opposed to general versus narrow. As opposed to a specific standard. Yes. And clearly here, if you look at the general standard, the general standard talks about a fact of prior conviction. And looking at that general standard, can you show me any case that would conclude that what the state court did here in sentencing reasonably applied apprendi? I don't know of any case where they took contradictory, inconsistent facts and enhanced the statutory maximum from 20 to 50 years. I don't know of any case. Okay. But in a way, the lack of a case on this point sort of goes to the AEDPA standard. That is, I understand your point that apprendi, you say, clearly encompasses this. My point is that apprendi basically didn't cover anything with respect to facts about a prior conviction because that was all dicta. But in addition, you know, I'm not being clear about this. The only reason I was talking about estoppel was because the basic point, as I understand it, is these facts could be relitigated by the sentencing court. The question is what standard. So now we're looking for a case from the United States Supreme Court which says that if you have facts in the record that are inconsistent with a verdict, you know, in a plea, there are lots of reasons why there's discretion with respect to a plea and why a plea might be one thing rather than another. I turn around the question and say, is there any U.S. Supreme Court case that says once we enter a plea, even if there are undisputed facts that are contrary, and again, undisputed facts, there has never been a dispute as far as I can tell that there was a girl in that house. You're conceding then, as I understand it, based on Judge Fischer's question, you're conceding Mr. Holtzman is correct when he argues that there is no Supreme Court case that says the trial judge in the state court could do what the judge did here. There's no case that says that. Nor is there a case that says they can't. Correct. So the whole case comes down to whose burden it is. Right. Under AEDPA, does there need to be a case that says you can do it? Right. State judge? Right. Or does there need to be a case that says state judge, you can't do that? Right. The Commonwealth doesn't – the state courts don't need to identify a case which clearly support what they do, the holdings and the dicta of what they do. The idea is we're in a murky area, so the only way to overturn what the state court did is to identify a case that clearly the holding is – Says you can't. Says you cannot. Let me state the contrary to that for a second. Go ahead. The – if under these facts, okay, these general facts, if it doesn't – aren't you eliminating the unreasonable application prong by saying that the court's application of apprendi under these facts could be reasonable? Because I can't think of any that would be more unreasonable. What about if the – That's the flip side of your argument. If there was some indication in the record that the defendant said there was no girl in that house, that would be much more within – I think even then we'd have a problem because there are no holdings on the recidivism exception. To convictions. We're really in apprendi. We're not in Shepard. We're not in what a court can consider. We're under apprendi. And it's talking about what was someone convicted of. So it's not really what someone said or what someone admitted. It's whether you have been convicted of a violent felony. And if you're being sentenced for something of which you weren't convicted and it's raised your statutory maximum, I mean, I don't know about you, but that would come as a little bit of a shock later on. Once you pled – I mean, we're talking about the Constitution. We're not talking about statutory interpretation. We're talking about the Sixth Amendment requiring that a jury find facts beyond a reasonable doubt. The problem is the statutory maximum. I think it goes back to Mr. Holtzman's use of the term enhancement. And let's forget about enhancement and talk about statutory maximum. And let's forget that this was a plea we're talking about. Let's assume that in trial A, case A goes to trial for possession with intent of whatever controlled substance is convicted only of simple possession, not convicted of possession with intent. It's clear under the Supreme Court law that in that sentencing, a trial judge could look at what happened and increase the sentence within the prescribed sentencing range because the judge feels that this is not a guy who simply possesses drugs. This is a salary guy here, and we're going to increase the sentence proportionately. So long as the judge doesn't go above the sentence for simple possession and start going into possession with intent to distribute, the judge, I think we all agree, can do that. If we go to a second scenario where there's been a trial, same scenario, jury trial, convicts only of simple possession. The judge looks at the case and there is a boatload of drugs involved in the second case now. We're trying to decide if in the second case his sentence should be enhanced, whether it's a plea or trial in the second case, whether the defendant's sentence in that case should be enhanced based upon what happened in that first case. Defendant was found guilty only of simple possession. If there was a statute that allowed enhancement the second time around based upon a prior conviction for sales, I think that's the problem we've got here. Whether or not the judge can go back, even though the trial judge could have done it within the prescribed range, could a second judge, or even the original trial judge for that matter, go beyond the prescribed range and give a maximum sentence, give a sentence which would get him into a range for another crime. So if we simplify this, forget about case A, case B. Just like in case A, could the first judge who presided over that burglary back in 1997, I guess it was, say, well, yeah, you may, and forget it's a plea. It's a trial. He's convicted only of second-degree burglary. Could the first judge have said, yeah, convicted of second-degree burglary. The sentence for that is X. I'm giving you two X because I heard the complaining witness said she was there. I believe her. I don't know what the jury was thinking about when she testified. But in my mind, she was there, and I'm going to sentence her accordingly. I think we'd agree, maybe not, that that trial judge could not do that. Don't we have the same situation under Apprendi if we remove that scenario to the second situation where you have a look back to that first circumstance? Isn't it exactly the same constitutional problem? No. I agree with Your Honor's characterization of whether there would be a problem the first time around because once you move to a second trial, it becomes facts about recidivism. But to do what? How do you use those facts? Do you use those recidivist facts only to increase within the primary range of the offense of conviction, or do you use those facts to go in Apprendi's language beyond the prescribed statutory maximum? I would say that there would be a real problem or a much more— what I would think would be a much more serious problem if the fact to be second-guessed was the subject of evidence at the first trial and disputed. By a serious problem, you mean the Commonwealth would lose. I mean, to you, that would be a serious problem. Well, I—yes. I mean, that's one way of having a serious problem. Let me go back. Isn't Judge Rendell's question really the one that's spot on? That is that when you look at Apprendi, and it says that Almedares-Torres represents, quote, at best, an exceptional departure, and it says that Almedares-Torres had admitted the three prior earlier convictions, and here this person admitted an F-2 conviction. He did not admit an F-1 conviction, and therefore you can't go beyond that. Well, but a couple of things. First of all, what are we talking about admitting? Is it the conviction itself? He admitted that he had the elements of an F-2 burglary, which do not include the elements, all the elements of an F-1 burglary. But did he ever dispute the underlying fact? What makes the difference? Here's what he admitted, because that's the fact. But when you say did he ever dispute it, since the definitions of F-2 and F-1 are mutually exclusive, I mean, this is not like there's a lesser included. F-2 is in a lesser included sense of F-1. It is definitionally different, and it can't overlap, correct? I agree. I mean, and this is definitionally different, and it can't overlap. By confessing to the one, he's necessarily denying the other. It's a matter of logical insistence. It has to be that if you say I burglarized a place that's not designed as a dwelling and no one is there, you can't possibly be admitting that you burglarized a dwelling and someone was there. But what if he admitted to the facts and he was cut a break? Well, first that didn't happen. Hold on. Time is up. Do you want to finish your question and let me answer that? My point was he didn't. Joe, time is up. I would like you to answer the question, which is since he admitted to something which excludes definitionally F-1, then aren't you in a circumstance where, as Judge Randell and now Judge Ambrose pointed out, you have to be right in the heartland of Apprendi. It can't be the case that that admission absorbs something which is inconsistent definitionally. I think that was the question. If it was, you can answer it. Well, I agree that this is almost a sui generis sort of situation because you have a very specific – I agree with that. I don't mean to underplay this, but the idea is – my basic point in response is that it raises a whole set of questions, which is we agree, even under Apprendi, that this could be re-litigated under a reasonable doubt standard with respect to a jury. Okay. Thank you very much.  Thank you very much. Mr. Holtzman, you reserved, I think, some time. Five minutes. Mr. Holtzman, in light of the concession by Mr. Zolganos, do you agree that the case comes down to whether there needs to be a Supreme Court decision that says you can do it as opposed to one that says you can't do it as a state trial judge? I don't agree with that. I believe that the standard here is the Panetti v. Quarterman question, which is Panetti v. Quarterman, the case that said, quote, even a general standard may be applied in an unreasonable manner, close quote, and that occurs, for example, where, quote, a record cannot, under any reasonable interpretation of the controlling legal standard, support a certain legal ruling, close quote. Earlier you argued that there was no case that said the state trial judge could do what was done here. So I understood that to be your position, that absent such a case, it is ipso facto unreasonable. I don't think it's ipso facto unreasonable, but, you know, if there's no case out there that supports the Commonwealth's position or my position, you look to Apprendi and say, you know, is it unreasonably applied in this particular situation? Is the prior conviction exception, as it's explained in Apprendi, being unreasonably applied to this particular set of facts and circumstances? In the phrase, in the Apprendi phrase, other than the fact of a, I guess we're beating a dead horse here, but, other than the fact of a prior conviction, the word, the court uses that phrase in the singular. In other words, it's a fact of a prior conviction. This is really Judge Jordan's point. He was making it earlier, and Judge Rendell. All you can look at is what the conviction was for. I understand that to be your view. And, of course, the court could have said facts underlying the conviction, which you can drill down a little bit further. But your view, I understand, is that the fact of a prior conviction means that you can only look at what the individual was convicted of and nothing else. Is that your view? And I believe that Apprendi is crystal clear on that point. I have a different view. That's not your point. But I thought I heard you say earlier that if there were facts that came out in a plea colloquy, even inconsistent facts, they could be considered. It can't be stretched further than that, is what I'm saying. Because if you read. You mean if when he pled guilty he had said, I know there was somebody there, but I went into the garage and stole something anyway? Right. That's not the case here. It's not the case here. And that would also raise the question that Judge Jordan opposed, which is could that be accepted as a plea? Oh, I'm not certain. I couldn't possibly say. These are the facts. We're only proceeding on the F-2 burglary. We're not proceeding on the F-1 burglary. But in terms of my submission of the facts, you're going to hear that at the time the defendant went into the structure, the person was present and the structure he went into was a house. Nevertheless, we've agreed to only proceed as though it were an F-2. But what's wrong with that? If the defendant wants to do another plea, he can do another plea or he can plead guilty to the F-2. And I think that that plea colloquy would have the trappings of constitutional certainty to it. But we don't have that here. We don't have that here. Does it matter whether the garage was attached? I'm curious about this. Was the garage was attached or not attached? That's a law school hypothetical. I think it has to be attached, but don't quote me on that. But I want to know. Were there facts? Well, this is serious, though. Were there facts in the record that showed whether it was attached or detached? I don't believe there are. I don't believe there are. What about a case where the defendant testifies at trial and says, yeah, I'm in for one kilo of cocaine? And later, can the judge say at sentencing, can the judge make a finding that the relevant conduct indicated that he really wasn't in for one kilo, he was in for seven kilos? No, I don't think so. Whoa, whoa, whoa. Why not? Not to raise the statutory maximum. Not to raise the statutory maximum. Correct. Can I ask you if you would respond to the Schiffler case? Are we really here by mistake? Or would you? He means this proceeding. Not the existential. That's a question for my parents. Maybe existentialism. Is this really the three strikes are there anyway? So what on earth are we talking about? Thank you, Your Honor. I'd like to address that point. Because Mr. Garris' 1997 burglary conviction, we believe can't be treated as a strike against him for the reasons I've discussed today. Under the three strikes law, his enhanced sentence only stands if he had two other prior strikes against him at the time when he committed the voluntary manslaughter at issue here. And what he had were two robberies for which he was convicted in the early 1990s. And during the post-conviction relief proceedings in this case, Mr. Garris argued that under State law principles, those two convictions should be treated as a single strike because the sentences ran concurrently with one another. But you say the Superior Court essentially granted him that point. And I'm looking for the language in the opinion of the Superior Court that says that. The Superior Court described the sentences as concurrent and simultaneous at different points in its opinion. Do you just have a cite to that part of the opinion? It's on the record 111A to 112A is where this is discussed. But in this case, the Superior Court didn't think it mattered. But then it goes on to explicitly say Schiffler does not afford appellant relief. Because it treated the 1997 conviction that we're talking about today as one of the strikes. If you take that off the table for the reasons we've been discussing today, then the Schiffler question does matter. And it becomes relevant. Take that from the context of the brief sentence I just read you. It didn't matter there. It didn't matter there. But it does matter if I'm right about Apprendi. It does matter. Mr. Hoffman, thank you very much. Thank you, Madam Advisor. We thank you. Thank you, Your Honor.